THE VILLAGE OF HYDE PARK

*v.*

THE WASHINGTON ICE COMPANY.

*Filed at Ottawa May 15, 1886.*

1. EMINENT DOMAIN—*measure of damages to property not taken.* In a proceeding to condemn a strip of land for a street, through premises made into a pond for freezing ice thereon, the proof showing that the property could not be devoted to any other use without a cost much in excess of its value, the court instructed the jury, in behalf of the land owner, to ascertain from the evidence, after their own view, the fair market value of the property sought to be taken, and also the damages to the property from which the strip was to be taken, and that if they believed, from the evidence, that the property of the defendant, in its (then) present condition, had a special capacity, as an entirety, for the purpose of ice freezing, cutting and transporting, and as an entirety was devoted to such purposes, and that the value of such tract would be depreciated and lessened by the taking of the strip in question, then the owners of the property were entitled to recover a sum equal to such depreciation in value: *Held*, that the instruction was correct.

2. SAME—*benefits as an offset to damages.* The question of damages in a condemnation proceeding is to be determined with reference to the special benefits, only, to the property not taken. Any mere general and public benefit or increase of value received by the land in common with other lands in the neighborhood, is not to be taken into consideration in estimating the damages.

3. INSTRUCTION—*directing attention to the party's theory of the case.* Where an instruction is given announcing a correct rule of law upon the theory of the party asking it, if the other party desires that the attention of the jury be directed to his theory of the case, he should ask an instruction embodying such theory.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. WILLARD & DRIGGS, for the appellant:

The court erred in giving the first and second instructions for the appellee, on the question of damages, under the evidence before the jury. The true question was, the effect of the proposed improvement upon the market value of the property,

—what it would have sold for unaffected by the proposed street, and what it would sell for as affected by it. *Page* v. *Railroad Co.* 70 Ill. 524; *Shawneetown* v. *Mason*, 82 id. 357; *Hyde Park* v. *Dunham*, id. 569; *Railroad Co.* v. *Hall*, 90 id. 42; *Green* v. *Chicago*, 97 id. 370.

Mr. Frederic Ullmann, for the appellee:

The first instruction is not open to the objections made against it. It does not ignore any evidence there may have been as to the benefits which the property, if used for other than ice purposes, would receive from the opening of the street. The jury must deal with the property as it finds it, and with the uses to which it finds it is adapted,—not such as it may be adapted to after the expenditure of more than the property is worth.

Mr. Justice Magruder delivered the opinion of the Court:

This was a proceeding by appellant to condemn certain land of appellee, and others, for the opening and extension of Onehundredth street, in the village of Hyde Park. Appellee filed its cross-petition, setting forth, that the proposed improvement would damage certain of its land not taken, and praying that such damages might be assessed, etc. There is no dispute, and can be none, under the stipulation in the record, in relation to the damages, awarded for the land actually taken. The sole contention is as to the damages to the lands, not taken.

The only error, insisted upon by appellant, is the giving of appellee's second instruction, which is as follows:

"The jury are instructed that they are to ascertain from the evidence, after their own view of the property, the fair market value of the property sought to be taken, and also the damages, if any have been proven, to the property from which the strip is to be taken. And if the jury believe, from the evidence, that the property occupied by the ice company, in

its present condition, has a special capacity, as an entirety, for the purpose of ice-freezing, cutting and transporting, and as an entirety is devoted to such purposes, and that the value of such tract will be depreciated and lessened by the taking of the strip in question, then the owners of the property are entitled to recover a sum equal to such depreciation in value."

The second sentence of this instruction, which is the only part of it, that is objected to, is an almost literal copy of the language of an instruction, which was approved of by this court in *Chicago and Evanston Railroad Co.* v. *Dresel*, 110 Ill. 89.

We do not think, that the instruction is improper, when considered in reference to its particular application to the facts of the case at bar. The objection, urged against it, is, that it ignores and excludes from consideration the evidence, which tended to prove, that the opening of the proposed street would benefit the property for use, for dockage and manufacturing purposes.

The property in question consists of about sixty-four acres in South Chicago, bounded on the west by the Pittsburgh and Fort Wayne railroad, on the east by the Calumet river, on the south by the lands of the South Chicago Dock Company, and, on the north, by certain forge works. In 1878 appellee constructed an ice pond upon the tract, which was a mere marsh. Large embankments, eighty feet wide, were thrown up around some thirty-five or forty acres of the tract, on the north, east and south sides, the railroad embankment protecting it on the west side. The enclosure was dredged, and thoroughly improved, and water pumped in from the river. A large ice house was built, and some $70,000 expended in fitting and preparing the pond for the business of freezing, cutting and transporting ice. The property has been used for the carrying on of such business since 1878 or 1879. Since that time it has increased in value. Docks, manufactures and lumber yards have been built and located around it since the ice business was started there. The chief advan-

tages of the locality for the purposes of making ice are the facts of the river on one side, where water can be obtained, and the railroad on the other, so that easy transportation can be procured.

The proposed street, eighty feet wide, will run through appellee's ice pond from east to west, splitting it into two parts. The part south of the street and between the street and the property of the dock company, will be a strip, one hundred and thirteen feet wide and one thousand eight hundred and twenty-five feet long, and will be practically useless for almost any purpose. The only ground, upon which it is claimed, that the opening of the street would benefit the property, is the fact, that it would thereby be more accessible, when used for dockage or manufacturing purposes. The evidence, however, shows, that the tract is only worth from $3000 to $3500 per acre, and that it will cost $4000 per acre to fill it up, and that it can not be used for dockage or manufacturing purposes, until it is filled up. The opening of the street will confer no benefit upon the property, situated as it is. $256,000 will have to be expended upon the sixty-four acres, in order to get it into such shape, that the benefits can be made available. Under this view of the testimony, it is questionable, whether an instruction, which had called the attention of the jury to the subject of benefits to be derived from the proposed improvement, would have been based on the evidence. The question of damages is to be determined with reference to special benefits to the property, not taken.. (*Village of Hyde Park* v. *Dunham*, 85 Ill. 569.) Any mere general and public benefit, or increase of value received by the land, in common with other lands in the neighborhood, is not to be taken into consideration in estimating compensation. *Page et al.* v. *Chicago, Milwaukee and St. Paul Ry. Co.* 70 Ill. 324.

But, even if there was evidence, which tended to show a special benefit to the property not taken, the instruction here under discussion, when taken in connection with the other

instructions, given for appellee, did not necessarily exclude the consideration of such benefit. The jury were asked to inquire, whether the opening of the street would depreciate the value of the property not taken. If the jury had found, that there was no depreciation, they may have reached that conclusion, because the benefits equalled or exceeded the depreciation. If they found, that the property was depreciated, they may have reached that conclusion, because the benefits derived were less than the depreciation produced. Either finding involved a consideration of benefits.

It is to be noted, that the appellant asked no instructions whatever of the trial court. Consequently none were given for it, nor can it complain of the refusal of any. If counsel for appellant had desired, that the attention of the jury should be directed to a particular theory of the case, they should have asked an instruction, embodying that theory.

The judgment of the county court is affirmed.

*Judgment affirmed.*